**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PHILIP J. ROSSI,

    Plaintiff,

        v.

ALL HOLDING COMPANY, INC.,

    Defendant.

CIVIL ACTION NO. 3:CV-11-1641

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are cross-motions for summary judgment filed by Defendant All Holding Company, Inc. ("All Holding") (Doc. 26) and Plaintiff Philip J. Rossi ("Rossi") (Doc. 30) on Rossi's claims that he was discharged from his employment with All Holding in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951-963.  Because Rossi fails to identify or provide evidence of record which would allow a finder of fact to reasonably infer that All Holding's proffered justification for his termination is merely pretext for age discrimination, All Holding's motion for summary judgment will be granted and Rossi's motion for summary judgment will be denied.

### I. Background[1]

**A.    Relevant Factual Background**

Rossi was initially employed as an account manager by Alderfer, Inc. ("Alderfer") from April 2006 through December 2008. (*Def.'s SMF*, ¶ 1; *Plf.'s Answer*, ¶ 1.)  As an account manager, Rossi was responsible for the sale of turkey, pork, and beef to the grocery industry. (*Def.'s SMF*, ¶ 2; *Plf.'s Answer*, ¶ 2.)

---

[1]    The facts are taken from the parties' statements of undisputed facts, (Doc. 27, "*Def.'s SMF*"; Doc. 32, "*Plf.'s SMF*"), answers to undisputed statements of facts, (Doc. 37, "*Def.'s Answer*"; Doc. 36, "*Plf.'s Answer*"), and the corresponding exhibits. (Doc. 29, "*Def.'s Ex.*"; Doc. 33, "*Plf.'s Tab*".)

On April 25, 2008, Rossi completed an annual written performance review for Alderfer. (*Plf.'s SMF*, ¶ 3; *Def.'s Answer*, ¶ 3.)  In that review, Rossi noted: "I feel we have accomplish [sic] much of the work we set out to do but much, much more to do.  My performance can be considerably better with timely answers, quick responses to customers." (*Id.*)  Rossi also requested Alderfer to provide some less expensive items to sell in order to improve his sales performance. (*Id.*)  In an April 25, 2008 performance review by his Alderfer supervisor, Earl Manhold, Rossi was noted as being good at setting quarterly and annual goals and striving to achieve those goals in a timely manner. (*Plf.'s SMF*, ¶ 4; *Def.'s Answer*, ¶ 4.)  Rossi was also recognized as being good at methodically and strategically working toward maximum market penetration. (*Id.*)  Further, he was rated as excellent in following leads and seeking new business. (*Id.*)

In 2008, Alderfer was combined with Leidy's, Inc. ("Leidy's") to form All Holding. (*Plf.'s SMF*, ¶ 1; *Def.'s Answer*, ¶ 1.)  Rossi worked for All Holding from December 2008 through May 2010. (*Def.'s SMF*, ¶ 4; *Plf.'s Answer*, ¶ 4.)  Although All Holding became Rossi's employer in 2008, the brand names on products continued to be Leidy's and Alderfer. (*Def.'s SMF*, ¶ 5; *Plf's Answer*, ¶ 5.)  With respect to the evaluation of sales personnel after the merger, All Holding did not have an official form on which its employees were evaluated. (*30(b)(6) Dep.*, 36:9-13.)  Instead, sales personnel were notified of their sales performance on a weekly basis. (*Id.* at 28:4-7.)

While employed by All Holding, Rossi was compensated by salary and commission. (*Def.'s SMF*, ¶ 7; *Plf.'s Answer*, ¶ 7.)  Rossi's starting salary with All Holding was $48,000.00 annually, and the base salary remained the same during his employment with All Holding. (*Def.'s SMF*, ¶ 10; *Plf.'s Answer*, ¶ 10.)  The commission payment was based upon the amount of pounds of product sold. (*Def.'s SMF*, ¶ 8; *Plf.'s Answer*, ¶ 8.)

Rossi's total income decreased from $68,058.67 in 2008 to $59,147.00 in 2009.

(*Def.'s SMF*, ¶¶ 15, 17; *Plf.'s Answer*, ¶¶ 15, 17.)   Rossi attributed the decrease in compensation to a decline in sales, (*Rossi Dep.*, 34:23-35:1), as a result of accounts that were taken from him and given to other employees. (*Id.* at 34:2-5.)  Rossi, however, could not identify any such accounts. (*Id.* at 35:6-7.)   Rossi also attributed his decreased compensation to a 5.0% across the board cut that applied to everyone in the company. (*Id.* at 111:10-23; *see also Plf.'s SMF*, ¶ 20; *Def.'s Answer*, ¶ 20.)

On June 4, 2009, Rossi's immediate supervisor while he was employed by All Holding, Jerry McMillan ("McMillan"), Vice President of Retail Sales, (*Def.'s SMF*, ¶ 12; *Plf's. Answer*, ¶ 12), sent an email to Rossi. (*Def.'s SMF*, ¶ 20; *Plf.'s Answer*, ¶ 20; *see also Plf.'s SMF*, ¶ 17; *Def.'s Answer*, ¶ 17.)  The  email summarized an in-person meeting between Rossi and McMillan. (*Id.*)  That email indicated that Rossi's first quarter sales tonnage for 2009 when compared with his first quarter sales for 2008 was down 9.1%. (*Def.'s Ex.* AH-24.)  Additionally, the email reflected that Rossi's sales tonnage through week 20 in 2009 compared to sales tonnage through the same week in 2008 was down 13.7%. (*Id.*)  Rossi, though, disputed the accuracy of those figures. (*Rossi Dep.*, 57:14-58:12.)  The email further emphasized that Rossi needed to establish a program to increase his sales for the final three quarters of 2009 by 10.0%. (*Def.'s Ex.* AH-24.)

Overall, while some of Rossi's accounts for 2009 experienced an increase in sales, the net effect for his territory was a decrease in sales of 141,000 pounds from the previous year. (*Rossi Dep.*, 70:12-22; *see also Def.'s Ex.* AH-28.)  And, although All Holding's sales increased for 2009, Rossi attributed this increase entirely to one customer. (*Rossi Dep.*, 45:25-46:1.)

For calender year 2010, Rossi committed to a 14.0% sales increase. (*Def.'s SMF*, ¶ 25; *Plf.'s Answer*, ¶ 25.)  On January 27, 2010, Rossi received an email from McMillan which advised, in part:

You stated last night that I blame all things on the sales team, what we as the sales team are responsible for and do not accomplish we will be held accountable for.  If you are going to continue to be a member of the Retail Sales Team you will be held Accountable and Responsible for the procedures and policies that are in place or are put in place in the future.

Phil, before the holidays, it was suggested to you that spending time here in the office to become more familiar with our CSB system would help you in the pursuit of new business, you agreed to do so, but you chose not to spend any time in here training.  I still wonder why.

I have a saying "If it's to be, it's up to me" instead of saying someone else is responsible, take on the responsibility.  It will make your life much easier.  We have had 14 months to make the transition All Inc. things are different.  You will be held Accountable and Responsible, embrace that change from the previous culture and you will be successful.  Continue to buck the system and there will be severe consequences.

The choice is yours

(*Def.'s Ex.* AH-26.)  According to All Holding, the January 27, 2010 email constituted a warning notice of Rossi's poor sales, while Rossi emphasizes that the email does not reference "poor sales." (*Plf's SMF*, ¶¶ 12-13; *Def.'s Answer*, ¶¶ 12-13.)

On March 10, 2010, Rossi prepared a sales projection for 2010 that indicated an expected sales increase for his customers of 14.0%. (*Plf.'s SMF*, ¶ 36, *Plf.'s Tab* 7; *Def.'s Answer*, ¶ 36.)

At the end of March 2010, Rossi discussed areas for potential growth with McMillan. (*Def.'s SMF*, ¶ 30, *Plf.'s Answer*, ¶ 30.)  Although Rossi was advised by McMillan that they would meet in April 2010 to review his sales growth, they never met. (*Rossi Dep.*, 71:10-16.)

On April 9, 2010, Rossi received a weekly commission of over $1,000.00. (*Plf.'s Tab* 31.)  On April 12, 2010, Rossi communicated with McMillan about securing Weis Market's business. (*Plf.'s Tab* 30.)  And, the next day, Rossi attempted to secure an A&P account that could have secured 2-3 million pounds of deli business for All Holding. (*Plf.'s Tab* 30.)

On April 15, 2010, Rossi sought assistance from McMillan to sell bacon products to Foodtown. (*Plf.'s Tab*, 27.)  On April 26, 2010, Rossi prepared a "Weekly Customer Highlight Report," which indicated that he "[t]alked to Foodtown several times for the bid on

4

their business, no decisions yet," and that one of his goals for the current week was to "[t]ry once again to close Foodtown, on the bacon program." (*Plf.'s Tab.* 24; *see also Plf.'s SMF*, ¶ 44; *Def.'s Answer*, ¶ 44.)

Rossi continued his efforts to sell bacon products to Foodtown in May 2010. (*Def.'s SMF*, ¶ 36; *Plf.'s Answer*, ¶ 36; *see also Plf.'s Tabs* 19-23.)  Prior to May 2010, All Holding was selling Knaus brand dried beef and classic carver ham to Foodtown. (*Rossi Dep.*, 120:13-20.)  On May 11, 2010, Rossi sent a fax to the Production Department, with a copy to McMillan, advising that Foodtown was a "customer we may be picking up in the very near future." (*Def.'s Ex.* AH-47.)  Attached to that fax was a form entitled "Foodtown Packaging Project Request," with an "Initiation Date" of May 11, 2010. (*Id.*)  According to Rossi, that was the date that "the buyer told me they're coming with us." (*Rossi Dep.*, 119:10-11.)  Rossi, however, testified that Foodtown never signed a contract with All Holding, (*id.* at 120:6-7), and when asked if "Leidy's ever shipped any bacon product to Foodtown," Rossi answered: "I do not know.  But I don't think so.  I don't believe so." (*Id.* at 121:11-14.)  Rossi subsequently clarified that he interpreted the question as referring to whether any "Leidy's bacon" was ever shipped to Foodtown and not the private label program.  Rossi further explained that he was aware that bacon was to be shipped to Foodtown as of May 21, 2010. (*Plf.'s Answer*, Ex. A, ¶¶ 7-8.)

Rossi was terminated on May 21, 2010. (*Plf.'s SMF*, ¶ 55; *Def.'s Answer*, ¶ 55.)  Rossi was advised of his termination at a meeting with McMillan and Phil McClay ("McClay"), Director of Human Resources. (*Def.'s SMF*, ¶ 40; *Plf.'s Answer*, ¶ 40.)  At that meeting, Rossi was informed that he was being terminated for poor sales. (*Def.'s SMF*, ¶ 41; *Plf.'s Answer*, ¶ 41.)  The "Employee Termination Report" completed that day provides: "[y]ou were made aware of tonnage being down in your territory when the rest of the business is up.  You were given recommendations and expectations by your manager to

5

make improvements to increase sales and tonage however you have not met those expectations." (*Plf.'s Tab* 6.)  Rossi contends, though, that his sales expectations were set by him. (*Plf.'s Answer*, Ex. A, ¶ 2.)  The determination that Rossi's sales were poor was made by considering that his sales were down when the company's sales were up about 5.0%. (*30(b)(6) Dep.*, 15:15-22.)  At the time of his termination, Rossi was fifty-seven (57) years old. (*Def.'s SMF*, ¶ 42; *Plf's SMF*, ¶ 42.)

When Rossi was terminated, All Holding had either nine or ten account managers. (*Def.'s SMF*, ¶ 49; *Plf.'s Answer*, ¶ 49.)  Ken Barnes ("Barnes"), another account manager, was terminated the same day as Rossi. (*Def.'s SMF*, ¶ 51; *Plf.'s Answer*, ¶ 51.)  Barnes was fifty-three (53) years old when he was discharged, and he was also terminated for poor sales. (*30(b)(6) Dep.*, 22:22-23:5.)  However, at the time Rossi was discharged, Bill Carter ("Carter") and Bill Cooney ("Cooney") remained employed with All Holding as account managers, and they were both older than Rossi. (*Def.'s SMF*, ¶¶ 52-53; *Plf.'s Answer*, ¶¶ 52-53.)  Rossi, Barnes, Carter, and Cooney did not receive bonus payments based on their 2009 sales figures. (*30(b)(6) Dep.*, 44:5-8, 53:1-54:16.)  The only sales representatives to receive bonuses for that year were Joe Lojek and Beverly McDowell. (*Id*. at 44:5-8.)  Rossi indicated that Lojek was about his age and McDowell was in her fifties. (*Rossi Dep.*, 96:12-97:4.)

According to Rossi, he was replaced by Robert Laughlin ("Laughlin"). (*Def.'s SMF*, ¶ 43; *Plf.'s Answer*, ¶ 43.)  Laughlin was offered employment with All Holding in April 2010, approximately one month before Rossi was discharged. (*Def.'s SMF*, ¶ 44; *Plf.'s Answer*, ¶ 44.)  Rossi believes that Laughlin was about forty-five (45) or forty-six (46) years old when he was hired. (*Def.'s SMF*, ¶ 46; *Plf.'s SMF*, ¶ 46.)  Laughlin has since been terminated by All Holding for poor sales performance. (*30(b)(6) Dep.*, 37:6-15.)

**B.      Procedural History**

Rossi commenced this action on August 31, 2011.  In his three-count Complaint, Rossi asserted claims for wrongful termination, violation of the ADEA, and violation of the PHRA. (*Compl.*)  On January 17, 2013, pursuant to a stipulation by the parties, Rossi's wrongful termination claim was dismissed with prejudice. (Doc. 15.)

Following the close of discovery, the parties filed the instant cross-motions for summary judgment.  Both motions have been fully briefed and are ripe for disposition.

## II. Discussion

**A.      Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.  Where there is a material fact in dispute, the

moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

Where cross-motions for summary judgment are filed, as is the case here, the summary judgment standard remains the same. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Of course, when presented with cross motions for summary judgment, the Court must consider the motions separately, *see Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence presented for each motion in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## B.   Sham Affidavit Doctrine

In moving for summary judgment, Rossi relies, in part, on statements in a sworn declaration. (*Plf.'s Tab* 3.) And, in opposing All Holding's summary judgment motion, Rossi submitted a second declaration. (*Plf.'s Answer,* Ex. A.) All Holding argues that the Rossi's two declarations should be disregarded pursuant to the sham affidavit doctrine.

> A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment. A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant. . . . Therefore, if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). "[S]tatements which conflict with an individual's deposition testimony do not raise a genuine issue of material fact and can properly be disregarded where the conflict is unexplained or unsupported by other record evidence." *Ray v. Pinnacle Health Hosp., Inc.*, 416 F. App'x 157, 164 n.8 (3d Cir. 2010) (citing *Jiminez*, 503 F.3d at 253-54). "The timing of the affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent

evidence in the record supporting the affidavit, may be considered when determining whether an affidavit is a sham." *J.R. v. Lehigh Cnty.*, 534 F. App'x 104, 108 (3d Cir. 2013) (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268-69 (3d Cir. 2010)).

Because not all contradictory affidavits are necessarily shams, the Third Circuit has adopted a flexible approach for analyzing sham affidavits. *See Jiminez*, 503 F.3d at 254 (citing *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004); *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991); *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705-706 (3d Cir. 1988)).   When there is independent evidence in the record to corroborate an otherwise questionable affidavit, courts in the Third Circuit generally refuse to disregard the affidavit. *See id*. (citing *Baer*, 392 F.3d at 624-25).   Such corroborating evidence may demonstrate that the affiant was understandably mistaken, confused, or without possession of all of the facts during the deposition. *See id*. (citing *Baer*, 392 F.3d at 624-25).   Additionally, an affidavit will not be disregarded when the affiant offers a "satisfactory explanation" to explain the contradiction in his or her deposition testimony and the subsequent affidavit. *See id*. (citing *Hackman*, 932 F.2d at 241.)   Where the affiant, however, fails to explain the contradiction between a subsequent affidavit and the prior deposition testimony, a trial court may disregard the affidavit as a sham. *See id*. (citing *Hackman*, 932 F.2d at 241).

Rossi's declaration and second declaration were prepared on December 11, 2013 and December 27, 2013, respectively, which was after the close of discovery and after All Holding filed its motion for summary judgment.  And, portions of Rossi's declarations directly contradict the testimony he provided at his deposition on May 15, 2013.  According to Rossi's first declaration: "[o]nce All Holding Company purchased Alderfer, I noted a significant change in the manner in which older employees were treated.  This is true as all older employees who had previously worked for Alderfer were subsequently separated from employment while at All Holding." (*Plf.'s Tab* 3, ¶¶ 30-31.)  The first declaration similarly

provides that "all older employees who had come into the company from Alderfer were slowly being weeded out . . . ." (*Id.* at ¶ 42.)   During his deposition on May 15, 2013, however, Rossi testified as follows:

| Question: | So you claim that Leidy's[2] discriminated against you on the basis of your age? |
| --- | --- |
| Answer: | That's correct. |
| Question: | What did Leidy's do that you believe constituted discrimination on the basis of age? |
| Answer: | They hired people that were younger than I. |
| Question: | And that was after you were terminated? |
| Answer: | I don't know. |
| Question. | And other than hiring people younger than you, what else did Leidy's do that you believe constituted discrimination on the basis of age, if there is anything? |
| Answer: | There isn't anything. |

. . . .

| Question: | Now, in your complaint you allege that Leidy's was motivated to terminate your employment so it could hire a younger person? |
| --- | --- |
| Answer: | Yes. |
| Question: | What is the basis of that allegation? |
| Answer: | That they did.  They hired two people younger.  They hired a 30 some year old and they hired a 45 year old. |
| Question: | Anything else that supports that allegation other than the replacement being younger than you? |
| Answer: | No. |

. . . .

| Question: | At any time while you were employed at Leidy's from 2006 to 2010 did you ever assert that you had been discriminated against on the basis of your age? |
| --- | --- |

---

[2]     The parties agreed during Rossi's deposition that All Holding, Leidy's, and Alderfer were, for deposition purposes, one and the same. (*Rossi Dep.*, 136:9-19.)

| | |
|---|---|
| Answer: | No. |
| Question: | Are you aware of anyone else who made any allegation like that? |
| Answer: | No. |

(*Rossi Dep.*, 136:20-137:8, 139:4-15, 139:18-25.)

Here, the portions of Rossi's declaration addressing the poor treatment of older employees after Alderfer merged with Leidy's and formed All Holding directly contradicts his deposition testimony. Notably, during his deposition, Rossi testified that his sole reason for believing he was discriminated on account of his age was because he was replaced by a younger employee. Now, though, he asserts that there was a change in the way older employees were treated after All Holding was formed. Because Rossi fails to provide any explanation for his new testimony on this subject, these portions of his declaration will not be considered pursuant to the sham affidavit doctrine.

As to the remainder of the declarations, All Holding does not identify which portions contradict Rossi's prior deposition testimony. Rather, All Holding simply argues that "[m]any of the assertions in Rossi's declarations contradict his prior, sworn deposition testimony; thus, his declarations should be disregarded pursuant to the sham affidavit doctrine." (Doc. 38, 12.) With regard to the remainder of Rossi's declarations, his statements do not contradict his deposition testimony. Rather, his declarations are better characterized as elaborating upon his deposition testimony. *See, e.g., S.E.C. v. Retail Pro, Inc.*, 673 F. Supp. 2d 1108, 1136 (S.D. Cal. 2009) ("the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." (quoting *Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995))). Thus, the sham affidavit doctrine does not apply to these portions of Rossi's declarations because they do not contradict his deposition testimony. *See, e.g., Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 276 n.3, 284 (3d Cir. 2000) (rejecting district court's conclusion that plaintiff's

certification contradicted her deposition testimony).

## C.   Analysis

The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1). Of course, the purpose of this statute is to "prohibit age discrimination in employment" and "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b).

To succeed on an ADEA claim, a plaintiff must make a showing either by "(1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 261, 104 L. Ed. 2d 268, 109 S. Ct. 1775, 1796 (1989), or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas*."  *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (footnote omitted, referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).   Where indirect evidence is being relied upon, it is appropriate to proceed under the *McDonnell Douglas* analysis.  *Id*.  Under the *McDonnell Douglas* burden shifting exercise the burden of persuasion remains upon the plaintiff. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).  Here, the parties agree that the evidence in this case should be analyzed under the *McDonnell Douglas* framework.

As noted, following the close of discovery, Rossi and All Holding filed cross-motions for summary judgment.[3]  In his motion, Rossi contends that he is entitled to summary judgment because All Holding's rationale for terminating his employment is pretext for age

---

[3]      In their motions for summary judgment, neither party expressly addressed Rossi's PHRA claim.  Because the same legal standard applies to both the ADEA and the PHRA, it is proper to address the claims collectively. *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005).

discrimination.  Conversely, All Holding asserts that it is entitled to summary judgment for two reasons.  First, All Holding argues that summary judgment in its favor is warranted because Rossi was not qualified for the account manager position.  All Holding thus concludes that Rossi is unable to establish a *prima facie* case of discrimination.  Second, All Holding argues that even if Rossi establishes a *prima facie* case of age discrimination, it is entitled to summary judgment because he fails to identify any evidence that would allow a jury to reasonably infer that its poor sales justification is pretext for age discrimination.

### 1.   *Prima Facie* Case

To establish a *prima facie* case of age discrimination, Rossi must demonstrate (1) he is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004) (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

All Holding concedes that Rossi is over forty, suffered an adverse employment action, and was replaced by a sufficiently younger employee to allow for a reasonable inference of discrimination. (Doc. 28, 5 n.2.) However, All Holding maintains that Rossi was not qualified for the position, which it contends is confirmed by the fact that he was terminated for poor sales.  In opposition, Rossi argues that All Holding's poor sales explanation  is more appropriately considered at the later stages of the *McDonnell Douglas* analysis and not in determining whether he has established a *prima facie* case.

"In determining whether a plaintiff was 'qualified' for a position, the court must consider whether the plaintiff had the objective experience and education necessary to qualify as a viable candidate for or maintain the position of employment." *Straka v. Comcast Cable*, 897 F. Supp. 2d. 346, 357 (W.D. Pa. 2012) (citing *Kennedy v. Chubb Group of Ins.*

14

*Cos.*, 60 F. Supp. 2d 384, 391 n.1 (D.N.J. 1999)).  Recently, Judge Brann considered whether a plaintiff's qualifications for a position should be viewed under an objective standard or pursuant to an employer's subjective expectations. *See Sweeney v. Roche Diagnostics Corp.*, No. 11-CV-1691, 2013 WL 6731049, at *6-8 (M.D. Pa. Dec. 19, 2013). According to Judge Brann:

> The weight of authority in the Third Circuit stands for the proposition that a plaintiff's subjective qualifications should not be considered at the *prima facie* stage of the *McDonnell Douglas* analysis; whether a plaintiff subjectively fulfilled an employer's expectations is more appropriately considered during the pretext stage of the analysis, because those alleged shortcomings are more probative of the employer's motivation to discharge the employee (if it was indeed a legitimate discharge) than they are probative of the employee's actual qualifications.

*Id*. at *6 (citing *Fayewicz v. Redner's Markets, Inc.*, No. 09-2596, 2010 WL 1644626, at *8 (E.D. Pa. Apr. 23, 2010)).  Thus, "'while objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality is better left to the later stage of the *McDonnell Douglas* analysis.'" *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 938-39 (3d Cir. 1997) (quoting *Weldon v. Kraft*, 896 F.2d 793, 798 (3d Cir. 1990)).  The Third Circuit has explained that the "rationale behind this position is that 'subjective evaluations are more susceptible of abuse and more likely to mask pretext' and, for that reason, are better examined at the pretext stage than at the *prima facie* stage." *Id*. at 939 (quoting *Weldon*, 896 F.2d at 798); *but see Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 119 (3d Cir. 2003) ("[t]o be 'qualified' a plaintiff must have been 'performing his job at a level that met his employer's legitimate expectations' at the time of his discharge.").  Thus, where a defendant's argument regarding the qualifications of a plaintiff is tied to its claim of a legitimate justification for the adverse employment action, "courts should be careful not to 'collapse the entire *McDonnell Douglas* analysis in the first step.'" *Cellucci v. RBS Citizens, N.A.*, - - - F. Supp. 2d - - -, 2013 WL 6641290, at *7 (E.D. Pa. Dec. 17, 2013) (quoting *Dorsey v. Pittsburgh Assoc.*, 90

15

F. App'x 636, 639 (3d Cir. 2004)).

In view of this authority, I agree with Judge Brann that an employee's qualification for a position should be resolved objectively and not by a subjective qualification standard established by an employer. *See Sweeney*, 2013 WL 6731049, at *8 ("[t]his Circuit has long held that if cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents. . . . Therefore, to the extent the *Detz* decision conflicts with the objective qualification standard articulated in *Matczak* and *Weldon*, the objective standard controls."). Considering Rossi's qualifications objectively, he was qualified to be an account manager for All Holding. In particular, Rossi has worked in the sales profession since 1974. (*Plf.'s Tab* 3, ¶ 5.) Rossi has worked in sales for a number of companies as a food broker during his career. (*Id*. at ¶¶ 15-19, 21-22.) Moreover, the record establishes that Rossi performed his job successfully for over two years for Alderfer before it merged with Leidy's. (*Plf.'s Tab* 17.) While All Holding explains that the declining sales demonstrate Rossi's lack of qualification for his position, there is nothing in the record "showing that the goals [he] was expected to meet 'constituted a standard of performance expected of all' employees in [his] position, instead of a subjective determination by [his supervisor] of the performance level [he] had to achieve to be deemed a satisfactory" account manager. *Cellucci*, - - - F. Supp. 2d - - -, 2013 WL 6641290, at *7 (quoting *Weldon*, 896 F.2d at 799). As such, Rossi's claimed performance deficiencies are better examined at the later stages of the *McDonnell Douglas* analysis. For purposes of the first step of the *McDonnell Douglas* analysis, Rossi has demonstrated that he was qualified to be an account manager. Therefore, All Holding's motion for summary judgment on the basis that Rossi failed to establish a *prima facie* case of age discrimination will be denied.

### 2.    Non-Discriminatory Justification for Adverse Employment Action

Because Rossi has satisfied his burden of establishing a *prima facie* case of age

16

discrimination, the burden shifts to All Holding "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)). "This burden is 'relatively light' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

Rossi does not concede that All Holding has come forth with a legitimate non-discriminatory reason for its action. Nonetheless, there is evidence in the record supporting All Holding's poor sales justification. Notably, All Holding has presented evidence that Rossi's sales in his territory were 141,000 pounds less in 2009 than they were in 2008. (*Def.'s Ex.* AH-28.) Moreover, Rossi's sales through week 15 of 2009 compared with his sales through the same week in 2010 demonstrate that his sales decreased by 46,538.85 pounds and $102,389.22. (*Plf.'s Tab 3*, Ex. A.) All Holding has therefore satisfied its relatively light burden at the second step of the *McDonnell Douglas* analysis.

### 3.    Pretext

Because All Holding satisfied its burden of providing evidence, which, if true, would permit a conclusion that Rossi was terminated for a non-discriminatory reason, the third step in the *McDonnell Douglas* analysis shifts the burden of production back to Rossi to identify evidence from which a finder of fact could reasonably infer that All Holding's proffered rationale is simply pretext for discrimination. *See Burton*, 707 F.3d at 426. Proving pretext "'places a difficult burden on the plaintiff.'" *Carlson v. Twp. of Lower Alloways Creek*,

452 F. App'x 95, 100 (3d Cir. 2011) (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)).   To defeat a motion for summary judgment, the plaintiff must make a showing of pretext. *Burton*, 707 F.3d at 426-27 (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)).   "The plaintiff may demonstrate that the defendant's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a 'but for' cause of the adverse employment action." *Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes*, 32 F.3d at 764). "Regardless of the method, the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a 'but for' cause for the adverse employment action." *Id*. (citing *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009); *Smith*, 589 F.3d at 691).

Both parties argue that they are entitled to summary judgment under this step of the *McDonnell Douglas* analysis.   Rossi insists that the summary judgment record does not support All Holding's proffered rationale that he was terminated for poor sales and judgment in his favor is therefore appropriate.   All Holding, on the other hand, advances the position that there is no evidence in the record which supports a finding that its poor sales justification is pretext for discrimination.   That is, All Holding argues that Rossi has failed to identify or present evidence to allow a reasonable finder of fact to disbelieve its poor sales rationale or conclude that age was a "but for" cause of his termination.   Hence, All Holding reasons that its motion for summary judgment should be granted.   Rossi's arguments will be addressed first.

### a.   Rossi's Motion for Summary Judgment

In seeking summary judgment, Rossi acknowledges that to discredit All Holding's poor sales justification, "'he cannot simply show the employer's decision was wrong or

mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.'" (Doc. 31, 11 (quoting *Fuentes*, 32 F.3d at 765).)  Nevertheless, Rossi argues that All Holding's poor sales rationale is pretext for the following reasons: (1) All Holding's corporate designee could not define the criteria it relied upon in concluding that Rossi had poor sales; (2) he was terminated the same day as another salesperson above the age of fifty; (3) the January 27, 2010 email indicating that there could be consequences did not reference poor sales; (4) the sales comparison utilized by All Holding only compared the first quarter sales of 2009 and 2010; (5) the first quarter decrease in sales in 2009 was reported by percentage, while in 2010 All Holding only used absolute tonnage numbers to report declining sales; (6) he was requested to commit to a 14.0% sales growth in 2010 despite his declining sales figures for the previous year; (7) All Holding failed to recognize his efforts to develop the Foodtown account and the foothold he made with Foodtown in 2010; (8) All Holding's sales contrast for 2010 when compared to 2009 sales was flawed because he was not provided promotional funding, he suffered the impact of price increases, and he was not provided support by his supervisor; (9) no customer ever complained about him or his sales; and (10) he saw an advertisement for the position he held months before his termination. (Doc. 31, 11-14.)

Rossi's evidence is best analyzed under *Fuentes*' first avenue for demonstrating pretext, which allows a plaintiff to present evidence that could lead a reasonable factfinder to "disbelieve the employer's articulated legitimate reason." *Fuentes*, 32 F.3d at 764. When a plaintiff's evidence relates to the credibility of an employer's proffered justification, it "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Burton*, 707 F.3d at 427

(quoting *Fuentes*, 32 F.3d at 765).

Viewing the evidence in the light most favorable to the non-moving party, Rossi fails to establish that All Holding's proffered justification for his termination is pretext for discrimination.  While Rossi contends that All Holding's sales data was flawed, that the sales comparisons from 2009 and 2010 were in different formats (absolute tonnages and not percentages), and that All Holding failed to account for his progress in securing additional Foodtown business in 2010, these facts alone do not establish that All Holding's poor sales justification is pretext for age discrimination and that but for Rossi's age he would not have been terminated.  Therefore, Rossi's motion for summary judgment will be denied.

### b.    All Holding's Motion for Summary Judgment

In All Holding's cross-motion, it contends that summary judgment should be granted in its favor because Rossi fails to satisfy his burden of production under the third step of the *McDonnell Douglas* analysis and present evidence by which a factfinder could reasonably infer that its proffered rationale is merely pretext for discrimination. *See Burton*, 707 F.3d at 426 (citing *Fuentes*, 32 F.3d at 764-65).  According to All Holding, the record is devoid of evidence which would permit a reasonable finder of fact to disbelieve its poor sales justification or conclude that age was a "but for" cause of Rossi's termination.

Rossi disputes All Holding's assertion that the record in this case would not permit a juror to disbelieve All Holding's poor sales rationale.  Rather, Rossi maintains that "when the matter is viewed objectively, the circumstantial evidence in this record presents a triable issue as to the questionable legitimacy of the Defendant's claims of poor sales and the sabotage Plaintiff received in his efforts to secure a most lucrative bacon account with Foodtown." (Doc. 35, 6-7.)  Rossi cites much the same evidence and presents similar arguments in opposing All Holding's motion that he relied on in support of his motion. Specifically, Rossi argues that the pretextual nature of All Holding's action is "most evident"

in the first quarter sales review in 2010 when his sales were short in some areas but productive in others. (*Id*. at 16.)  Other evidence, according to Rossi, which evinces pretext and would allow a juror to disbelieve All Holding's stated rationale includes: (1) he never received an unsatisfactory performance review; (2) there was no comparison of his sales against other account managers; (3) he was not, in fact, provided counseling prior to his termination; (4) All Holding was seeking his replacement in the months prior to his termination and before he had his 2009 review/2010 planning meeting; (5) an offer letter was sent to his replacement, Laughlin, a month before he was terminated; (6) his efforts with Foodtown for bacon product were "coming to fruition at the time of his termination"; (7) he created his own action steps to correct his perceived shortcomings; and (8) his supervisor did not provide support. (Doc. 35, 7-11, 13.)

Rossi's evidence and arguments fail to create a triable issue because the record would not permit a jury to reasonably infer that All Holding's poor sales justification is simply pretext for discrimination.  First, Rossi's attacks on the credibility of All Holding's justification fail to demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).[4]  For instance, Rossi's contention that pretext is demonstrated based on the fact that he never received an unsatisfactory performance review is unavailing because the record establishes that All Holding did not conduct formal, written performance reviews, but, instead, its account manages were informed of their sales

---

[4]     Where a plaintiff has come forth with sufficient evidence to allow a reasonable jury to discredit an employer's proffered rationale, he or she need not present additional evidence of discrimination beyond the *prima facie* case to survive summary judgment. *See Burton*, 707 F.3d at 427 (citing *Fuentes*, 32 F.3d at 764; *Fasold v. Justice*, 409 F.3d 178, 185 (3d Cir. 2005)).

performance through weekly reports.  Likewise, Rossi's claim of pretext on the basis that his sales were not compared against other account managers does not demonstrate a weakness or implausibility in All Holding's rationale to terminate Rossi because of *his* sales performance.  And, despite Rossi's contention to the contrary, at this stage of the *McDonnell Douglas* analysis, it is his burden to identify evidence of his sales performance compared to the sales performance of other account managers.  Rossi, however, failed to satisfy his burden or point to any evidence to support the suggestion that he performed better than other account managers that were not discharged.

Furthermore, Rossi's claims that he was not provided counseling, that All Holding advertised his position in the months before he was terminated, and his replacement was offered his position prior to his discharge do not contradict All Holding's justification that he was separated from his employment because of his performance.  At most, these facts establish that All Holding decided to discharge Rossi in the months preceding his actual termination on May 21, 2010.  Significantly, though, these facts do not undermine All Holding's stated justification that Rossi was terminated because of declining sales.

Rossi also suggests that All Holding's failure to account for his efforts to sell bacon products to Foodtown confirms he was not discharged for poor sales.  However, "it is well-settled that a plaintiff may not defeat summary judgment merely by questioning the business judgment behind an employer's decision, absent other evidence of impermissible motives." *Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 528 (3d Cir. 2007) (citing *Billet v. CIGNA Corp.*, 940 F.2d 812, 825-828 (3d Cir. 1991)); *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].").  Essentially, Rossi is questioning All Holding's business judgment by arguing that his value or performance as an account manager should have factored in his

efforts to secure the Foodtown bacon account. But, it is not for the Court to "sit as a super-personnel department that reexamines an entity's business decisions." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (citation omitted).

And, Rossi's claims that he was denied support and promotional funding and was impacted by increased pricing does not create a triable issue as to whether All Holding's poor sales justification is implausible. While, if true, this may have affected Rossi's sales, there is nothing in the record that suggests that other employees were provided support Rossi was denied, provided promotional funding, or were not impacted by pricing increases. Thus, considering these facts in light of the entire record would not permit a rationale factfinder to conclude that All Holding's poor sales justification is unworthy of credence.

Second, Rossi fails to make a showing of pretext as he is unable point to evidence in the record which would allow a rationale factfinder to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of All Holding's action, *Burton*, 707 F.3d at 427, or "believe discrimination was more likely than not a 'but for' cause of the adverse employment action." *Abels*, 507 F. App'x at 153; *see also Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998) (the plaintiff must "point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision.").

Here, the record is devoid of evidence that age was a cause of Rossi's discharge. Indeed, during his deposition, Rossi testified that he believed he was discriminated against on account of his age solely because he was replaced by a younger employee. (*Rossi Dep.*, 136:20-137:8.) Rossi's mere belief that he was discharged on the basis of age is not of sufficient force to allow a reasonable jury to conclude that age factored into All Holding's action. *See, e.g., Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) ("a

plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim."); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination.");*Tillman v. Redevelopment Auth. of Phila.*, No. 12-1505, 2013 WL 5594701, at *8 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age was a factor in the termination decision."). *McGrath v. Lumbermens Merch. Corp.*, 851 F. Supp. 2d 855, 864 (E.D. Pa. 2012) (the plaintiff's mere belief or supposition that he was terminated because of his age is insufficient to trigger liability under the ADEA).  Thus, Rossi fails to satisfy his burden at the third step of the *McDonnell Douglas* analysis.

In sum, applying the *McDonnell Douglas* burden shifting framework, Rossi established a *prima facie* case of discrimination, and All Holding responded by identifying a legitimate non-discriminatory reason for the adverse employment action.  Rossi's age discrimination claims, however, fail at the third step of the *McDonnell Douglas* analysis. Considering the evidence of record in the light most favorable to Rossi and resolving all reasonable inferences in his favor, Rossi is unable to present a triable issue with regard to whether All Holding's proffered justification is pretext for age discrimination.  All Holding is entitled to summary judgment on Rossi's age discrimination claims.

### III. Conclusion

For the above stated reasons, Defendant All Holding's motion for summary judgment will be granted and Plaintiff Rossi's motion for summary judgment will be denied.  Judgment will be entered in favor of All Holding and against Rossi.

An appropriate order follows.

January 30, 2013
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge